UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
------------------------------:
                              :
UNITED STATES OF AMERICA      :
                              :
                              :
    -vs-                      :    Case No. 1:18-cr-305
                              :
                              :
MERGIA NEGUSSIE HABTEYES,     :
            Defendant.        :
                              :
------------------------------:
```

DETENTION HEARING

August 24, 2018

Before:    Theresa C. Buchanan, U.S. Mag. Judge

APPEARANCES:

Jamie B. Perry, Counsel for the United States

Kevin E. Wilson, Counsel for the Defendant

The Defendant, Mergia Negussie Habteyes, in person

1           NOTE:  The case is called to be heard at 2:03 p.m. as

2  follows:

3           THE CLERK:  The United States versus Mergia Habteyes,

4  case number 18-cr-305.

5           MS. PERRY:  Good afternoon, Your Honor.

6           THE COURT:  Good afternoon.

7           MS. PERRY:  Jaime Perry from the U.S. Department of

8  Justice.

9           THE COURT:  Good afternoon.

10         MR. WILSON:  Good afternoon, Your Honor.  Kevin

11  Wilson here on behalf of Mr. Habteyes.  And Mr. Habteyes is

12  present with the interpreter.

13         THE COURT:  All right.  And this is on for -- sorry,

14  we need to swear the interpreter.

15         NOTE:  The interpreter is sworn.

16         THE INTERPRETER:  Hailu Gtsadek with the Amharic

17  language.

18         THE COURT:  Good afternoon, thank you.

19         And this is for a detention hearing.  Did you want to

20  proceed with that today?

21         MR. WILSON:  Yes, Your Honor.  And the last time we

22  were in court before you took a recess, you continued this out

23  for us to have time to get an appropriate third-party

24  custodian.  And you were going to make a determination as to

25  whether it's just third-party custodian or third-party

1  custodian and some cash bond.

2  THE COURT:  I'm sorry, the door closed and I couldn't

3  hear what you just said.

4  MR. WILSON:  You were going to make a determination

5  as to what needed to be provided for a bond, whether it was

6  just a third-party custodian or is it a third-party custodian

7  and some amount of cash.

8  THE COURT:  Well, I meant both.

9  MR. WILSON:  Okay.

10  THE COURT:  And I have the updated report.  And --

11  all right, let me hear first from the Government.

12  MS. PERRY:  Your Honor, the Government would renew

13  its arguments for pretrial detention at this time.  The

14  Government does still believe that the defendant poses a

15  serious risk of flight, again given the pending sentence in

16  Ethiopia, the possible penalty of denaturalization and

17  deportation to serve that sentence at the conclusion of this

18  case, as well as his ties to Canada.  Crossing a land border in

19  Canada does not require a passport book.

20  And so, the Government does renew its arguments for

21  pretrial detention.

22  THE COURT:  All right.  Do you have anything to add?

23  Do you have anything to add?

24  MR. WILSON:  Nothing additional, Your Honor.

25  THE COURT:  The bond is simply insufficient in terms

1  of the amount that could be posted.

2    MR. WILSON:  Can you tell me what amount would be

3  sufficient?

4    THE COURT:  You know, I think we'd have to be talking

5  about at least a half a million, frankly.  Because of the

6  serious nature of the charges in Ethiopia, what he is facing

7  here, the risk of non-appearance here I think is substantial.

8  And I don't think we have come anywhere close to what I am even

9  thinking of on bond.

10    There is also the -- it would be unsecured as well,

11  and that's problematic.  I don't think it's really got much

12  value if it is unsecured.

13    MR. WILSON:  Your Honor, I have a third-party

14  custodian that is willing to put up cash.

15    THE COURT:  I saw that, $20,000.

16    MR. WILSON:  Right.

17    THE COURT:  It's insufficient.

18    MR. WILSON:  Well, we didn't -- we didn't have a lot

19  of guidance as to the dollar amount --

20    THE COURT:  No, you didn't, and I will grant you

21  that.  But he is also not willing to post his -- the defendant

22  is not willing to post his residence as collateral.

23    You know, and as I said before, I think that the risk

24  of non-appearance here is very great if he is convicted of

25  these charges.  He doesn't have the right to stay here.  So I

1    think that we are facing a large risk of flight.

2           And I understand that, but I'm guessing, frankly,

3    that it doesn't seem to me based on what I have seen that there

4    is the wherewithal to come up with a bond in that amount.

5           So at this point I find that there are no conditions

6    or combinations of conditions that would assure his appearance

7    in court.

8           If things change and if you are able to come up with

9    a third-party custodian who is willing to post a substantial

10   bond, then you can always bring a motion to reconsider.

11          MR. WILSON:  Your Honor, would -- the third-party

12   custodian is here.  Is it possible for me to have a few minutes

13   to speak with him to see if he would consider putting his

14   property up as well?

15          THE COURT:  Why don't you talk to him after I hear

16   the next -- when I hear the next case --

17          MR. WILSON:  Okay.

18          THE COURT:  -- and come back.  I can't imagine that

19   that's the case, but I can call you after the next matter if

20   you need to.

21          MR. WILSON:  All right.  Okay.  Thank you.

22          THE COURT:  The defendant is remanded to the custody

23   of the Marshal.

24          NOTE:  At this point a recess in the hearing is

25   taken; at the conclusion of which the hearing continues as

1  follows:

2          THE CLERK:  Recalling the United States versus Mergia

3  Habteyes, case 18-cr-305.

4          THE COURT:  I am sorry, Mr. Wilson, I forgot about

5  you.

6          MR. WILSON:  You forgot about me?

7          THE COURT:  I'm sorry.  It has been a long week.

8          MR. WILSON:  Well, you can make it up to me with a

9  little chain of mind.  It's all fair.

10          THE COURT:  Well, don't count on it.

11          MR. WILSON:  So, Your Honor, I just want to start

12  just quickly just bringing out some things that we mentioned

13  before.  And then I will get to the --

14          THE COURT:  Okay.

15          MR. WILSON:  -- increase in money that we have.  But

16  Mr. Habteyes, you know, he has significant ties to this area.

17  I mean, he has been in this country since 1999.  He has a home

18  of his own.

19          THE COURT:  I know.

20          MR. WILSON:  He has been working for 18 years.

21          THE COURT:  I know.

22          MR. WILSON:  He has two teenage kids.  And, and most

23  importantly, he is a citizen.

24          THE COURT:  Well, that's debatable.

25          MR. WILSON:  Right.  But as we stand here today, he

1  is a U.S. citizen.

2          THE COURT:  I understand that.  But if he is

3  convicted of that -- these charges, that is not going to be the

4  case.  And I have to take that into consideration.

5          MR. WILSON:  Right.  So you gave us an opportunity to

6  see if we could come up with more money, and we were.

7          THE COURT:  Right.

8          MR. WILSON:  We have a commitment of $100,000, which

9  is a lot of money.

10          THE COURT:  Yeah.  I just don't think that's

11  sufficient.  I think it would have to be more than that.  It

12  would have to be secured.  I don't see any means of securing

13  that, at least according to the Pretrial report.

14          MR. WILSON:  When you say "secured," secure the cash?

15          THE COURT:  Either cash, or a surety bond, or secured

16  to property.

17          MR. WILSON:  Right.  We have $100 cash that we could

18  have --

19          THE COURT:  $100,000 in cash?

20          MR. WILSON:  Well, they would bring a bank check --

21          THE COURT:  Well, if we get to 500, let me know and

22  then we'll have another hearing.

23          MR. WILSON:  And here is the other thing.  And I

24  think I already know the answer, but he has his own property

25  with over $100,000 of equity in it.  The number is 500,000?

1          THE COURT:  Uh-hmm.

2          MR. WILSON:  Okay.  I will work on that.

3          THE COURT:  And a suitable third-party custodian.

4          MR. WILSON:  We have that.  That gentleman is here.

5          THE COURT:  I mean -- all right.  But is he -- okay.

6          MR. WILSON:  He is willing to let him live in his

7    home.  Probation already did an immigration check --

8          THE COURT:  If you get to that point, I'll reopen the

9    hearing.

10          MR. WILSON:  Okay.  All right.  Thank you.

11          THE COURT:  For change in circumstances.

12          Court stands in recess.

13          NOTE:  The hearing concluded at 2:33 p.m.

14     ------------------------------------------------

15          C E R T I F I C A T E  of  T R A N S C R I P T I O N

16

17          I hereby certify that the foregoing is a true and
     accurate transcript that was typed by me from the recording
18     provided by the court.  Any errors or omissions are due to the
     inability of the undersigned to hear or understand said
19     recording.

20          Further, that I am neither counsel for, related to,
     nor employed by any of the parties to the above-styled action,
21     and that I am not financially or otherwise interested in the
     outcome of the above-styled action.

22

23

24               /s/ Norman B. Linnell
                  Norman B. Linnell
25                Court Reporter - USDC/EDVA