

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 1:18-cr-305-TSE |
| ) | |
| MERGIA NEGUSSIE HABTEYES, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The United States and the defendant, MERGIA NEGUSSIE HABTEYES, agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. The government's evidence would show that in 1974,[1] Ethiopia's imperial government was overthrown by a council of military officers commonly known as the *Derg*. In 1977, Mengistu Haile Mariam became the *Derg*'s chairman. Under Mengistu's rule, the *Derg* launched a decentralized campaign of violence against political opponents, including members, perceived members, and supporters of the Ethiopian People's Revolutionary Party (the "EPRP"). This period of violence, the peak of which began in 1977 and continued into 1978, came to be known as *Qey Shibir* or the "Red Terror."

2. The government's evidence would further show that during the Red Terror, the *Derg* and its affiliates arrested, extra-judicially detained, interrogated, and tortured tens of thousands of EPRP members, perceived members, and supporters, many of whom were juveniles. Some of these individuals were ultimately executed.

---

[1] All dates referred to in this Statement of Facts are in the Gregorian calendar.

3. The government's evidence would further show that during the Red Terror, large urban villas were converted into makeshift neighborhood prisons where EPRP members, perceived members, and supporters were detained, interrogated, and tortured. The *Derg* armed local civilian supporters who served as interrogators and torturers in these prisons.

4. The government's evidence would further show that during the Red Terror, the Ethiopian capital of Addis Ababa was organized into *Keftegnas*, which were administrative units akin to city wards or districts. *Keftegna* is an Amharic word that translates to "Higher" in English. *Keftegna* Three, or Higher Three, was a district in Addis Ababa in which a large villa, along with its surrounding compound, was converted into a makeshift prison to house detainees.

5. During the Red Terror, the defendant served at the instruction of the *Derg* from in or around 1977 to in or around 1978. In that capacity, the defendant participated in the persecution of detainees—that is, he inflicted injury to detainees' persons on account of their political opinion.

6. Along with others who served at the instruction of the *Derg*, the defendant detained individuals and in the process ~~bound their hands and feet and~~ beat them with weapons that included belts, rods, and other objects. The government's evidence would show that these beatings caused permanent scarring and injury to some of the detainees who endured them. During these beatings, the defendant, along with others who served the *Derg*, questioned the detainees about their affiliation with the EPRP and opposition activities of the EPRP.

7. In April 1999, the defendant submitted a Form I-590, Registration for Classification as a Refugee, and Form G-646, Sworn Statement of Refugee Applying for Entry into the United States. That same month the defendant's application was approved and he was

2

granted refugee status in the United States. In July 1999, the defendant entered the United States as a refugee.

8. In July 2000, the defendant submitted a Form I-485, Application to Register Permanent Resident. In conjunction with his application, the defendant was interviewed, under oath, in August 2004. In February 2005, the defendant's application was approved and he became a lawful permanent resident of the United States.

9. In November 2007, the defendant submitted a Form N-400, Application for Naturalization. In conjunction with his application, the defendant was interviewed, under oath, on September 20, 2008. On that same date, the defendant's application for naturalization was approved and he became a naturalized United States citizen in a proceeding held at the offices of United States Citizenship and Immigration Services located in Fairfax County, Virginia, within the Eastern District of Virginia.

10. During the sworn interview that took place on September 20, 2008, a United States immigration official asked the defendant whether he had ever persecuted any person, directly or indirectly, because of race, religion, national origin, membership in a particular social group, or political opinion. The defendant answered, "no." In so answering, the defendant knowingly provided a false response that was material to the approval of his application for naturalization. His false statement in response to this question was material because the fact about which he lied, had it been known to the United States, would have justified denial of naturalization or would have predictably triggered an investigation that would have likely uncovered facts warranting denial of naturalization.

11. During the sworn interview that took place on September 20, 2008, a United States immigration official asked the defendant whether he had ever committed a crime or

3

offense for which he was not arrested. The defendant answered, "no." In so answering, the defendant knowingly provided a false response because, as he then and there knew, he had committed crimes for which he was never arrested against detainees during the Red Terror—namely, grave willful injury, common willful injury, or assault, as proscribed by the 1957 Penal Code of the Empire of Ethiopia. His false statement in response to this question was material because the fact about which he lied, had it been known to the United States, would have justified denial of naturalization or would have predictably triggered an investigation that would have likely uncovered facts warranting denial of naturalization.

12. During the sworn interview that took place on September 20, 2008, a United States immigration official asked the defendant whether he had ever given false or misleading information to any United States government official while applying for any immigration benefit. The defendant answered, "no." In so answering, the defendant knowingly provided a false response because, as he then and there knew, he had falsely represented that he had never, in or outside the United States, knowingly committed any crime of moral turpitude for which he was not arrested. His false statement in response to this question was material because the fact about which he lied, had it been known to the United States, would have justified denial of naturalization or would have predictably triggered an investigation that would have likely uncovered facts warranting denial of naturalization.

13. During the sworn interview that took place on September 20, 2008, a United States immigration official asked the defendant whether he had ever lied to any United States government official to gain entry or admission into the United States. The defendant answered, "no." In so answering, the defendant knowingly provided a false response because, as he then and there knew, during the process of applying for status as a refugee in the United States, he had

falsely represented that he had never ordered, assisted, or otherwise participated in the persecution of any person because of race, religion, or political opinion. His statement in response to this question was material because the fact about which he lied, had it been known to the United States, would have justified denial of naturalization or would have predictably triggered an investigation that would have likely uncovered facts warranting denial of naturalization.

14. The defendant's materially false representations in sworn statements to United States immigration officials, as recounted above, resulted in his procurement of naturalization contrary to law.

15. When the defendant applied for refugee status in the United States, he was interviewed, under oath, by a United States immigration official. During that interview, the defendant knowingly concealed his participation in persecution of persons on the basis of their political opinion as described above.

16. At the time the defendant obtained refugee status in the United States he was, in fact, not entitled to such status because he had ordered, incited, assisted, or otherwise participated (directly or indirectly) in the persecution of persons on account of their political opinion. Because the defendant was not eligible for refugee status, he was not entitled to any subsequent United States immigration benefits, including naturalization.

17. Because, as set forth in this Statement of Facts, the defendant gave false testimony for the purpose of obtaining United States immigration benefits, he was not a person of "good moral character," as that term is defined in Title 8, United States Code, Section 1101(f). As such, the defendant could not satisfy the requirements for naturalization and was not entitled to that immigration benefit.

18. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

19. This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

20. This Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the plea agreement is presented to or accepted by a court. Moreover, the defendant waives any rights that he may have under Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, the United States Constitution, and any federal statute or rule in objecting to the admissibility of this Statement of Facts in any such proceeding.

Respectfully Submitted,

G. Zachary Terwilliger
United States Attorney

By: /s/ Alexander E. Blanchard
Alexander E. Blanchard
Assistant United States Attorney
United States Attorney's Office

Brian A. Benczkowski
Assistant Attorney General
United States Department of Justice
Criminal Division

By: /s/ Jamie B. Perry
Jamie B. Perry
Trial Attorney
United States Department of Justice
Human Rights and Special
Prosecutions Section

I have reviewed this Statement of Facts with the assistance of a federally certified English-Amharic court interpreter. After consulting with my attorney and pursuant to the plea agreement entered into this day between the United States and me, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____ 2/26/2019
MERGIA NEGUSSIE HABTEYES
Defendant

I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____ 2/20/2019
Kevin E. Wilson, Esq.
Kenneth P. Troccoli, Esq.
Counsel for the Defendant